STATE EX REL. JAMES E. MURPHY *v.* FRED R. ZELLER, COMPTROLLER

SUPERIOR COURT    HARTFORD COUNTY    FILE No. 110377

Memorandum filed January 3, 1958.

*Hon. James E. Murphy,* of Bridgeport, pro se.

*John J. Bracken,* attorney general, and *Louis Weinstein,* assistant attorney general, of Hartford, for the defendant.

COMLEY, J. On July 1, 1955, and for many years prior thereto, the relator, hereinafter called the plaintiff, was a judge of the Superior Court. On that date there became effective § 1965d of the 1955 Cumulative Supplement, which provides in part that "each judge of the superior court shall receive annually" a salary of $18,500.

For many years before July 1, 1955, it had been the practice of the defendant and his predecessors in office to pay judicial salaries in semimonthly instalments on the 15th and last days of each month. The same method was used in paying all, or substantially all, other state officers and employees. These dates fell upon various days of the week. In response to the request of representatives of large

groups of employees who desired to receive their pay on a fixed day of the week, the defendant, on July 1, 1955, abandoned the semimonthly system and adopted a biweekly system whereby all those who are considered as working in the Hartford area, including judges, are paid by check dated on Thursday of every other week.

In setting up the biweekly system for the fiscal year commencing on July 1, 1955, the defendant proceeded upon the hypothesis that there are five working days in each week, Saturdays and Sundays being excluded. He then calculated the number of working days between July 1, 1955, and June 30, 1956, at 261. He then divided the annual salary rate of each officer and employee by this figure to arrive at a rate of pay per working day. On Thursday of every other week the officer or employee was paid by check representing ten times the amount of his daily rate less deductions for withholding tax, insurance, etc. Each payment covered a period of ten working days running from Friday through Thursday of the next week but one.

In the plaintiff's case this system worked out as follows for the fiscal year commencing on July 1, 1955: His annual statutory salary of $18,500 was divided by 261, giving a daily pay rate of $70.88. On Thursday of alternate weeks he was issued a check representing $708.81 less proper deductions. July 1, 1955, happened to be a Friday. On Thursday, July 14, a check was issued to the plaintiff in the basic amount of $708.81 less deductions. Throughout that fiscal year he received similar checks issued on alternate Thursdays. The last Thursday of that fiscal year fell on June 28, 1956. Between July 14, 1955, and June 28, 1956, he was issued twenty-six such checks, representing a base pay of $18,429.06, which is $70.94 less than the salary prescribed for him by statute.

· The defendant denies that there was any such shortage. It is his claim that this deficit of approximately one day's pay was made up to the plaintiff in the next check issued to him after the close of the fiscal year on June 30, 1956. This check was issued on July 12, 1956, in the amount of $708.81, of which, so the defendant argues, $70.88 represents payment for the last working day of the preceding fiscal year and the balance represents payment for the first nine working days of the fiscal year commencing on July 1, 1956. It is the defendant's further claim that this method of payment is authorized by § 49c of the 1953 Cumulative Supplement (Cum. Sup. 1955, § 66d), which provides: "The comptroller shall pay all annual and per diem salaries within two weeks after the close of the payroll period in which the services were rendered . . . ."

It is unnecessary to decide whether this last contention based on § 49c is sound. It is probably true that there could be no valid objection to the payment of a salary instalment within a reasonable time after the expiration of the fiscal period in which the services are rendered. The objection to the defendant's system goes deeper than that and rests upon the fact that the shortage in the plaintiff's compensation for the fiscal year of 1955 has never, in fact, been made good to him. This fallacy in the system can best be demonstrated by indulging in the assumption that the plaintiff will continue to occupy the position of judge of the Superior Court at the same statutory salary until the close of the fiscal year ending on June 30, 1965.

During the fiscal year ending June 30, 1957, there were 260 working days. Dividing the statutory salary by this number gives a per diem rate of $71.15 and a total compensation during the fiscal year of $18,500.04 or an excess of four cents over the statutory salary. In each of the fiscal years ending on

June 30, 1958, and June 30, 1959, there will be 261 working days. In each of these years, as in the fiscal year ending on June 30, 1956, there would be a shortage of $70.94. In the fiscal year ending June 30, 1960, there will be 262. Dividing the statutory salary by this figure gives a per diem rate of $70.61. There would be issued during this fiscal year twenty-six checks, each in the amount of $706.11. These checks would total $18,358.86, which is $141.14 less than the statutory salary. In the fiscal year ending June 30, 1961, there will again be 261 working days, and again there will be a shortage of $70.94. In each of the two fiscal years ending on June 30, 1962, and June 30, 1963, there will be 260 working days. As in the fiscal year ending June 30, 1957, there would be paid to the plaintiff in each of these years four cents more than his statutory salary. In the fiscal year ending June 30, 1964, there will be 262 working days. As in the year ending June 30, 1960, there will be a shortage of $141.14. In the fiscal year ending June 30, 1965, there will be 261 working days, and again there will be a shortage of $70.94.

Thus, during a period of ten years, based upon an application of the defendant's system there would be shortages in seven of those years totaling $636.98. In the same period there would be overages in three of those years totaling twelve cents. Thus there would be a net shortage over this period of $636.86. During those ten years the plaintiff would be entitled to receive the sum of $185,000. He would, in fact, receive $184,363.14. It is thus an inescapable fact that the shortages in the plaintiff's compensation which exist in those years where there are 261 or 262 working days are never really cured by the defendant's bookkeeping system.

The plaintiff is, therefore, entitled to an order directing the defendant to reimburse him for the shortage in his pay of $70.94 during the fiscal year

ending June 30, 1956. The court does not deem it necessary to enter an order for the payment of a shortage of six cents during the fiscal year ending June 30, 1957, since the defendant in open court offered to make this good. Nor does the court decide that the defendant's system is invalid as applied to those employees of the state who are not public officers and whose salaries are not fixed by statute. In the case of such employees there may be involved certain considerations which do not affect one who, like the plaintiff, is a public officer on a statutory salary.

Judgment is rendered for the plaintiff, and the defendant is ordered to pay the plaintiff $70.94 with interest from June 30, 1956.